# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ANTWUAN ALLEN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:18-CV-152 SNLJ |
| DALE GLASS, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Antwuan Allen, (registration no. 2012095458), an inmate at St. Charles County Department of Corrections, for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will direct plaintiff to file a second amended complaint.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner=s finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## 28 U.S.C. § 1915(e)

Under 28 U.S.C. § 1915(e)(2)(B), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,570 (2007).
To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 679. This is a "context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 680-82.

Pro se complaints are to be liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), but they still must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court must weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004).

**The Complaint**

Plaintiff Antwuan Allen, an inmate at St. Charles Detention Center, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights during his incarceration at the St. Louis Medium Security Institute ("MSI").

Plaintiff names twenty-five (25) defendants in this action. Many of the defendants are John Does or Unknown Defendants. The named defendants are as follows: Dale Glass (Commissioner, MSI); Jeffrey Carson (Superintendent); Irene Mitchell (Major); Gary Hayes (Chief Investigator); Unknown Unit Manager Primm; Lieutenant Unknown Lindsey; Lieutenant Unknown Benjamin; Lieutenant M. Butler; Officer T. Roberts; Officer I. Griffen; Major Russell

Brown; City of St. Louis; Captain Unknown Ervins; Lieutenant Unknown Miller; Medical Director Unknown Norton; Case Manager Unknown Dixon; Unknown Officers; Unknown Lieutenants; Unknown Captains; Unknown Majors; Unknown Superintendents; Unknown Food Service Staff; Unknown Unit Managers; Unknown Case Managers; and Unknown Medical Staff. Plaintiff sues defendants in their individual and official capacities.

Plaintiff's complaint is comprised of thirty-five (35) numbered paragraphs. These paragraphs are handwritten and extremely difficult to read. He begins listing his claims in paragraph 19, wherein he states that he is a pretrial detainee who is currently being house at the St. Charles County Jail. He asserts that prior to being placed at MSI, in June of 2017, he had several ulcers removed from his stomach. Plaintiff states that after his stomach surgery, he was prescribed a "high protein/low-carb diet." He claims that as a result of such diet, he began eating a "vegan diet," which "sustain [his] health." He alleges that "he was told" to take senna or Miralax for bowel movements.

Plaintiff asserts that he was placed at MSI on November 17, 2017. He asserts that "one of the first things [he] noticed was that there were bloody panties and fecal stained underwear scattered about, as well as dirty clothing scattered about." Plaintiff alleges that the wall in the booking area was covered in grime/black mold/fungus, and there was chipped paint falling from the ceiling. Plaintiff complains that he inhaled the chipped paint and it caused him to cough.

In the next paragraph of his complaint, plaintiff states that when he told the intake officers that he was Sunni Muslim and that he followed a vegan diet, they made fun of him verbally. He claims that Case Manager Dixon called him stupid and told him that "black folks eat meat." He asserts that for over two weeks afterwards, food service workers failed to provide him with a vegan diet. He claims that defendant Dixon did nothing by ridicule him and went so far as to tell the food service workers that they should deny his request, even though plaintiff

believed the vegan diet to be medically necessary. Plaintiff states that he lost weight over the course of the two weeks, but he was eventually provided with the vegan diet.

After intake plaintiff was placed in one of the dorms, and he claims that the dorm had black mold and fungus on the walls. He asserts that he smelled strongly of urine in the dorm, and he also noticed rats, roaches, and pests running over the floor. Plaintiff further alleges that the dorm lacked heat, and when the inmates begged to have the heat turned on, unnamed officers laughed.

Plaintiff asserts that defendant Dale Glass was responsible for overall administration of MSI, including making and enforcing facility policies, dealing with Food Service at MSI/ ensuring that inmates received proper meals, provisioning prisoner clothing, provisioning hygiene items to prisoners, dealing with maintenance/adequate shelter at MSI, and making sure MSI had proper sanitation. Plaintiff alleges that defendant Jeffrey Carson was directly below defendant Glass in rank. Plaintiff states that defendant Carson was responsible for setting policy in conjunction with defendant Glass, as well as requiring the various Majors, Captains, Lieutenants, Investigators, the Chief Investigators, and Officers to carry out policies.

Plaintiff alleges that at intake, he was denied hygiene products, except for one bar of soap, one toothbrush, and some toothpaste. He claims that he was not given lotion, shampoo, deodorant, a comb, socks, a T-shirt, or a pair of boxers, during the entirety of his stay at MSI. He claims he made repeated requests for said items, but that MSI has a custom or policy of refusing to give inmates hygiene supplies.

Plaintiff alleges that he was forced to live in "abysmal conditions." He states that dust, mold, and grime was caked to the walls, and that he was forced to inhale this dust and grime. Plaintiff claims that it was freezing in the dorms with little to no heat. He also states that he was not given cleaning supplies, and instead had to attempt to clean the facility by putting shampoo

on rags or napkins. Plaintiff alleges that he requested cleaning supplies, but that defendants Mitchell, Norton, Brown, Unknown Majors, Unknown Captains, Unknown Lieutenants and Unknowns Officers refused these requests. Plaintiff states that it was so cold with little to no clothing and just a thin blanket that he contemplated suicide.

Further, plaintiff alleges that defendants Glass and Carson were made aware of these conditions by both oral and written grievances; however, no corrective action was taken.

Plaintiff claims that the toilets often overflowed in the dorms, leaking urine and fecal matter. He also claims that his dorm was infested with rats, roaches, and snakes. Plaintiff alleges that defendants Glass and Carson were responsible for him living in these conditions due to their supervisory capacity.

Plaintiff alleges that inmates were forced to participate in "fight clubs," and that if they refused, they were food trays. Plaintiff claims these fight clubs were sanctioned by defendants. Plaintiff states that these defendants would at times serve as "hosts for these tournaments." He further alleges that he was "severely injured" as a result of participating in these fight clubs.

Plaintiff alleges that defendants were responsible for ensuring that he lived in sanitary conditions. He claims that these defendants failed to remove vermin, provide cleaning supplies, and fix the toilets, despite complaints being made about these issues.

**Discussion**

Plaintiff's allegations regarding the conditions of his confinement are serious and, if properly pleaded, could be sufficient to pass through § 1915 review. *See e.g.*, *Turner v. Mull*, 784 F.3d 485, 491 (8th Cir. 2015) ("inmates are entitled to reasonably adequate sanitation"); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("Punishment that deprives inmates of the minimal civilized measures of life's necessities is unconstitutional"); *Divers v. Dep't of Corrections*, 921 F.2d 191, 194 (8th Cir. 1990) (inmates are entitled to adequate clothing and a

nutritionally adequate diet). However, the amended complaint filed by plaintiff remains deficient. Plaintiff alleges numerous factual allegations regarding the cleanliness, temperature, food, and safety of MSI. His amended complaint does not, however, allege facts showing how each individual plaintiff was directly involved in or personally responsible for the alleged violations of his constitutional rights.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see, also*, *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) ("Government officials are personally liable only for their own misconduct").

Here, plaintiff's amended complaint takes a shotgun-like approach, naming a string of defendants allegedly responsible for each alleged violation. For instance, plaintiff claims that he did not receive cleaning supplies, and gives various details to support the claim. He then lists all of the defendants' names in a sentence, concluding that none of them "took any remedial measures to correct these problems." Similarly, plaintiff alleges that he received inadequate nutrition. Again, he lists the names of all the defendants, and states that they "took no collective or individual action to ensure" plaintiff received edible meals or the correct vegan meals. He never states how any specific individual defendant violated his rights or was somehow to blame for the alleged harm he suffered.

This type of pleading does not meet the requirement that plaintiff establish a causal link to, and direct responsibility for, the alleged deprivation of his rights. In order to meet this threshold, plaintiff must plead that each individual defendant, through his or her own personal

actions, violated his rights. He cannot raise a claim and then simply assert that all the named defendants are responsible.

The Federal Rules of Civil Procedure require a plaintiff to make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement needs to give the defendant fair notice of the claim and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Plaintiff's amended complaint does not comply with these provisions. By lumping all the defendants together and holding them jointly responsible, as plaintiff does throughout the amended complaint, he fails to give each defendant fair notice of what they are alleged to have done.

Because of the nature of the allegations and because plaintiff is proceeding pro se, the Court will allow him an opportunity to file an amended complaint. Plaintiff should type, or neatly print, the amended complaint, and should use a court-provided form. Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b). Plaintiff should select the claim(s) he wishes to pursue, and limit the factual allegations to only the defendant(s) who were actually involved. If plaintiff names more than one defendant, he must assert only claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may name one single defendant and bring as many claims as he has against him or her. *See* Fed. R. Civ. P. 18(a). Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both.[1]

In the "Caption" section of the form complaint, plaintiff should write the name of the defendant(s) he wishes to sue. The title of the complaint must name all of the parties that plaintiff intends to sue. *See* Fed. R. Civ. P. 10(a). In the "Statement of Claim" section, plaintiff should

---

[1] The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow this same procedure for each defendant. That is, for each defendant, he must separately write the defendant's name and then, under that name, provide a short and plain statement of the factual allegations supporting his claim against that specific defendant. The Court emphasizes that it is not sufficient to list a group of defendants and state they violated his rights. Instead, plaintiff must separate his claims, and must allege facts showing how each individual defendant is directly responsible for the alleged harm. The allegations must be simple, concise, and direct. As noted above, they must be in numbered paragraphs, each paragraph limited to a single set of circumstances.

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. If plaintiff fails to file a second amended complaint on a Court-provided form within twenty-one days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within twenty-one (21) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk is directed to mail to plaintiff a copy of the Court's Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that plaintiff must file an amended complaint within twenty-one (21) days from the date of this Order on the court-provided complaint form.

**Plaintiff's failure to timely comply with this order will result in the dismissal of this case without prejudice and without further notice.**

Dated this 22nd day of August, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE